IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS EDWARD CARTER,

    *Petitioner*,

    v.

UNITED STATES OF AMERICA,

    Criminal Action No. ELH-00-0100

    *Respondent*.

**MEMORANDUM OPINION**

Defendant Thomas Edward Carter is currently serving a sentence of life imprisonment

plus 30 years, imposed in 2001 by Judge Andre Davis.[1]  This Memorandum Opinion resolves the

"Motion For A Reduced Sentence" filed by appointed counsel on behalf of Carter, pursuant to

Section 404 of the First Step Act of 2018 ("2018 FSA"), Pub. L. No. 115-391, 132 Stat. 5194,

5222 (2018).  *See* ECF 38 (the "Motion").  The Motion is supported by several exhibits.

Carter seeks a reduction of his sentence "to 324 months (or less)," ECF 381 at 3, ¶ 17 and

ECF 408 at 5, or to "time served" or "262 months imprisonment." ECF 381 at 10, ¶ 31.[2]  In its

response (ECF 389), the government agrees that Carter is entitled to a reduction of his sentence,

but it disagrees with the extent of Carter's sentencing reduction request.  It seeks a total sentence

of 60 years' imprisonment.  *Id.* at 3.  Carter has replied (ECF 408), and has submitted additional

exhibits.  With leave of Court (ECF 412), the government has filed a surreply.  ECF 413.  And,

pursuant to requests of the Court (ECF 402; ECF 418), additional exhibits have been submitted

---

[1] Upon Judge Davis's elevation to the Fourth Circuit, the case was reassigned to Judge J. Frederick Motz.  It was reassigned to me on August 7, 2018, due to the retirement of Judge Motz.  *See* Docket.

[2] Carter also requested, alternatively, a sentence of "92 months."  ECF 381 at 10, ¶ 3. The Court assumes that the reference to 92 months is a mistake, given that Carter has already served far longer than 92 months.

by counsel.   They are docketed at ECF 400 (Statement of Reasons); ECF 400-1 (Sentencing Transcript); and ECF 420 (Presentence Report).[3]

I am satisfied that no hearing is necessary to resolve the Motion.   For the reasons that follow, I shall grant the Motion, in part.

## I.   Factual and Procedural Background

Carter and several others were charged with drug and firearms offenses in an Indictment filed on March 7, 2000.   ECF 1.[4]   A Superseding Indictment followed on August 8, 2000.   ECF 30.   And, a Second Superseding Indictment was filed on February 6, 2001, charging Carter and four others with various offenses.   ECF 88.   In particular, Carter was charged in four of eleven counts, as follows: conspiracy to distribute heroin, cocaine, and cocaine base, in violation of 21 U.S.C. § 846 and § 841(b)(1)(A) (Count One); and using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts Six, Seven, and Eight).

Carter, along with Bobby Brown and Julius Brown, proceeded to a jury trial that began on April 30, 2001, before Judge Davis.   *See* Docket.   The jury returned its verdict on June 5, 2001.   ECF 143.   Of relevance here, Carter was convicted of Counts One, Seven, and Eight, and he was found not guilty as to Count Six.   In addition, the jury made findings as to the drug quantities attributable to Carter.   It determined that Count One involved 100 grams or more of heroin, 50 grams or more of cocaine base, and no powder cocaine.   *Id.*

Judge Davis conducted Carter's sentencing on August 16, 2001.   *See* Docket; *see also*

---

[3] Mr. Carter has also adopted the submissions of codefendant Bobby Brown. *See* ECF 408 at 5 n.2; *see also* ECF 384; ECF 403.

[4] As a review of CM/ECF indicates, electronic availability of court filings does not begin until June 2008, with ECF 267.   However, I have reviewed the Chambers files retained by the two judges who previously handled Carter's case.

ECF 400-1 (Transcript).  Defendant, who was born in May 1972, was 29 years of age.  *See* ECF 408 at 1.[5]

Count One, by statute, required a mandatory minimum sentence of ten years' imprisonment, with a maximum of life imprisonment.  The U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") called for life imprisonment.  ECF 400.  And, according to the Presentence Report (ECF 420, "PSR"), a sentence of life imprisonment was required.  *Id.* ¶ 41.[6] By statute, Count Seven required a mandatory, consecutive sentence of five years of imprisonment, and Count Eight required a mandatory, consecutive term of 25 years of incarceration.  *Id.* ¶¶ 42, 43.

According to the PSR, Carter had a base offense level of 38 for Count One, the drug conspiracy count, pursuant to U.S.S.G. § 2D1.1(c)(1).  *Id.* ¶ 14.  However, in determining Carter's Guidelines range for Count One, the PSR did not rely on drug quantity.  Instead, the PSR applied the murder cross-reference provision, based on defendant's involvement in the first-degree murder of Douglas Pennix in 1999.  *Id.* ¶ 18.[7]  In particular, U.S.S.G. § 2D1.1(d)(1) states: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111, had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1."

Carter also received a four level upward adjustment under U.S.S.G. § 3B1.1(a) for his role as an organizer or leader in the offense, which involved five or more participants.  ECF 420,

---

[5] The defense asserts that the defendant was 23 years old at the time of the offense.  *See* ECF 408 at 3, 4.  I have relied on the information in the PSR.

[6] At the time, the Guidelines were mandatory, not advisory.

[7] Apparently, Mr. Pennix was shot from behind by codefendant Bobby Brown.  ECF 397 at 34; ECF 400-1 at 9.

¶ 18. Given that Carter went to trial, he did not earn deductions for acceptance of responsibility. Thus, Carter had a total final offense level of 47 for Count One. ECF 400-1 at 18; *see also* ECF 420, ¶ 20. And, as noted, by statute Counts Seven and Eight required mandatory, consecutive sentences of five years and 25 years, respectively, totaling 30 years. ECF 420, ¶ ¶ 24, 25.

The PSR reflected that Carter had a Criminal History Category of III. ECF 420, ¶ 35. However, Judge Davis determined that he had a Criminal History Category of I. ECF 400-1 at 6; ECF 400.[8]

The issue of the murder cross reference was addressed at sentencing. After careful consideration, Judge Davis applied the murder cross reference to Carter. ECF 400-1 at 9-10. The Court concluded that Carter and his codefendant, Bobby Brown, were "involved in a cold-blooded murder," *id.* at 9, and that "Bobby Brown was the shooter in the Pennix murder. And Mr. Carter participated in that conspiracy." *Id.* at 10.

As then required, Judge Davis imposed a term of life imprisonment as to Count One, a mandatory term of five years, consecutive, as to Count Seven, and a mandatory term of 25 years, consecutive, as to Count Eight. *See* ECF 408 at 22. This resulted in a total sentence for Carter of life imprisonment plus 30 years. ECF 172 (Judgment). The Court also imposed a period of supervised release of 25 years. *Id.*

Carter's convictions and sentence were affirmed on direct appeal. ECF 215; *United States v. Brown, et al.*, 70 Fed. App'x 99, 104 (4th Cir. 2003) (per curiam). Carter did not file a petition for certiorari to the Supreme Court. ECF 381 at 2, ¶ 15.

On August 11, 2005, Carter filed a motion to vacate under 28 U.S.C. § 2255. ECF 227. The government responded. ECF 241. By Memorandum Opinion and Order of June 26, 2006,

---

[8] In its response to the Motion (ECF 389), the government erroneously relies on ¶ 44 of the PSR to indicate that Carter had a Criminal History Category of III. *Id.* at 2.

Judge Davis denied the motion to vacate.  ECF 243; ECF 244.

Carter subsequently moved for a sentence reduction on September 15, 2008.  ECF 279.
On September 18, 2008, the Court appointed the Federal Public Defender to review Carter's
eligibility for a sentence reduction based on Amendment 706 to the Guidelines, relating to
cocaine base ("crack") offenses.  ECF 280.  The Office of the Federal Public Defender
subsequently concluded that Carter was ineligible for a sentence reduction.  ECF 283.  And, in
orders of February 3, 2009 (ECF 284) and February 5, 2009 (ECF 286), Judge Davis denied the
sentence reduction motion.  Carter's appeal (ECF 301) was dismissed by the Fourth Circuit.
ECF 305; ECF 306.

Carter filed another motion on June 2, 2014, challenging the application of the murder
cross reference.  ECF 342.  Judge Motz denied that motion by Memorandum and Order of
August 12, 2014.  ECF 347; ECF 348.

On April 24, 2019, Carter filed a motion for appointment of counsel.  ECF 377.  I granted
that motion.  ECF 378.  The Motion followed on November 8, 2019.  ECF 381.

In sum, Carter does not challenge the adjustments to his base offense level.  Rather, he
focuses on the changes in the law under the First Step Act; the factors in 18 U.S.C. § 3553; and
the change in the law as to the so called stacking of convictions under 18 U.S.C. § 924(c).

## II. Discussion

### A.

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed."
18 U.S.C. § 3582(c); *see United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United
States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, a district court may modify a
previously imposed sentence when modification is "expressly permitted by statute. . . ."   18

U.S.C. § 3582(c)(1)(B).  *See Jackson*, 952 F.3d at 495.  Section 3582(c)(1)(B) provides:  "The court may not modify a term of imprisonment once it has been imposed except that – (1) in any case – ... (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute...."

Of relevance here, modification is permitted for a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. . . ."  18 U.S.C. § 3582(c)(2); *see United States v. Smalls*, 720 F.3d 193, 195-96 (4th Cir. 2013).[9]  And, 2018 FSA expressly authorizes the modification of a previously imposed sentence for a defendant affected by earlier statutory changes to the penalty ranges for cocaine base (*i.e.*, "crack" cocaine) offenses.  *See Jackson*, 952 F.3d at 495.  In particular, Section 404 of the 2018 FSA "makes retroactive certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010)."  *Jackson*, 952 F.3d at 495.

The Fair Sentencing Act of 2010 ("2010 FSA") took effect on August 3, 2010.  It was enacted "in response to extensive criticism about the disparity in sentences between crack cocaine offenses and powder cocaine offenses."  *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013); *see United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020).  The 2010 FSA "reduced the statutory penalties for cocaine base offenses" in order to "alleviate the severe sentencing disparity between crack and powder cocaine."  *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016); *see Dorsey v. United States*, 567 U.S. 260, 264 (2012); *Black*, 737 F.3d at 282.

The 2010 FSA increased the drug quantities that trigger mandatory minimum sentences for crack cocaine.  *Dorsey*, 567 U.S. at 269; *Gravatt*, 953 F.3d at 260.  Specifically, the crack-to-

---

[9] "[A] sentence modification is not a plenary resentencing proceeding."  *Martin*, 916 F.3d at 396 (internal quotation marks omitted).

powder cocaine disparity was reduced from 100-to-1 to 18-to-1.  *Dorsey*, 567 U.S. at 269; *Gravatt*, 953 F.3d at 260.

Under Section 2 of the 2010 FSA, the sentencing range for possession with intent to distribute less than 28 grams of cocaine base is zero to 20 years imprisonment; the sentencing range for possession with the intent to distribute more than 28 grams but less than 280 grams of cocaine base is five to 40 years of imprisonment; and the sentencing range for possession with the intent to distribute more than 280 grams of cocaine base is ten years to life imprisonment. Section 3 of the Fair Sentencing Act, which is not at issue here, eliminated the mandatory minimum sentence for simple possession.  Therefore, under the 2010 FSA, Congress increased the threshold quantities needed to trigger any mandatory sentencing ranges associated with crack cocaine offenses.  *See Dorsey*, 567 U.S. at 269.

Thereafter, the Sentencing Commission amended the Guidelines to conform to the statute.  *Gravatt*, 953 F.3d at 260.  However, the 2010 FSA did "not apply its changes retroactively," so as to "alter statutory minimum terms of imprisonment" that were previously in effect. *Id.*  Therefore, Congress enacted the 2018 FSA. *Id.*

Under Section 404 of the 2018 FSA, the provisions of the 2010 FSA apply retroactively to defendants who were sentenced prior to August 3, 2010, *i.e.*, the effective date of the 2010 FSA. *United States v. Charles*, 932 F.3d 153, 162 (4th Cir. 2019).  Section 404 of the 2018 FSA provides:

**SEC. 404. Application of Fair Sentencing Act.**

(a) Definition of covered offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) Defendants previously sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

The procedural framework that applies to motions under Section 404 is found in 18 U.S.C. § 3582(c)(1)(B). *See United States v. Wirsing*, 943 F.3d 175, 183 (4th Cir. 2019) (concluding that § 3582(c)(1)(B) is "the appropriate vehicle" for a 2018 FSA motion). Thus, eligible defendants may seek to reduce their sentences, pursuant to 18 U.S.C. § 3582(c)(1)(B).

Of relevance here, the 2018 FSA permits, but does not compel, a district judge to reduce a defendant's sentence, as if the 2010 FSA were in effect when the defendant committed the offense. Section 404(c) expressly provides that any relief is discretionary. ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."); *see Gravatt,* 953 F.3d at 261; *see also Chavez-Meza v. United States*, ___ U.S. ___, 138 S. Ct. 1959, 1966 (2018) (stating that at a resentencing based on a change in the Guidelines range, the judge need not impose a sentence proportional to the sentence imposed under the earlier Guidelines range); *Jackson*, 952 F.3d at 502 (noting that the district court "was not obligated" to reduce the sentence, nor must a reduction based on revised guidelines correspond in proportion to an earlier guidelines sentence).

**B.**

As discussed, Section 404 of the 2018 FSA makes the provisions of the 2010 FSA retroactive to and available to defendants who were sentenced before August 3, 2010. Therefore, the threshold crack-cocaine quantities of the 2010 FSA apply to Carter, because he was sentenced in 2001, under the pre-amendment statutory framework.

The 2018 FSA authorizes courts, in their discretion, to reduce the sentences of eligible persons to the extent that their sentences would have been different if Sections 2 and 3 of the 2010 FSA had applied at the time of the initial sentencing. But, a district court is not required to grant such relief. *United States v. Venable*, 943 F.3d 187, 194, n.10 (4th Cir. 2019); *cf. United States v. Sellers*, 776 F. App'x 143 (4th Cir. 2019) (per curiam).

The parties dispute whether the court may hold a plenary resentencing. *See*, *e.g.*, ECF 408 at 5; ECF 410 at 2. If the Court were to hold a plenary resentencing, the defense contends that the "stacking" of the § 924(c) convictions would not apply, in light of the change in the law, and therefore Carter's sentence for Count Eight could be reduced to today's mandatory minimum of five years. In that circumstance, he seeks a total sentence of 27 years (17 years for Count One; five years for Count Seven; and five years for Count Eight). ECF 408 at 5. If the Court does not hold a new sentencing hearing, Carter nonetheless asks the Court to consider Section 403 of the 2018 FSA in reducing the sentence for Count One. *Id.* He seeks a sentence that satisfies "the interest of justice." *Id.* at 7.

As noted, the government agrees that Petitioner is eligible for a sentence reduction, pursuant to the 2018 FSA. But, it disagrees with Carter's request; it seeks a sentence of 30 years for Count One, plus 30 years, consecutive, for the two § 924(c) convictions.

It appears that in cases such as this one, the majority of courts have declined to conduct plenary resentencing proceedings, electing instead merely to recalculate the Guidelines. *See* ECF 410 at 2-3 (collecting cases); *see*, *e.g.*, *United States v. McKinney*, 382 F. Supp. 3d 1163, 1165-69 (D. Kan. 2019); *United States v. Sampson*, 360 F. Supp. 3d 168, 170 (W.D.N.Y. 2019); *United States v. Bellamy*, No. 4:06-CR-01001-TLW-2, 2019 WL 6524648, at *2 (D.S.C. Dec. 4, 2019); *see also United States v. Cruz*, No. 1:95-CR-204, 2019 WL 3070562, at *4-5 (M.D. Pa. July 12, 2019) (collecting authority and concluding that "[t]his court concurs with the government and the numerous other courts . . . which have held that no plenary resentencing is required regarding a motion for reduction of sentence under § 404(b); *United States v. Lawson*, 2019 WL 1959490, at *3 (N.D. Ohio May 2, 2019) ("[N]othing in the First Step act anticipates a cocaine set out in the Fair Sentencing Act."); *United States v. Shelton*, No. 3:07-329 (CMC), 2019 WL 1598921 (D.S.C. Apr. 15, 2019);   *United States v. Davis*, 2019 WL 1054554 at *2 (W.D.N.Y., Mar. 6, 2019; *United States v. Potts*, 2019 WL 1059837 at *2 (S.D. Fla., Mar. 6, 2019).

As I see it, I need not decide the issue of the availability of a plenary resentencing proceeding. This is because I am satisfied that a resentencing hearing is not warranted. I have been provided with ample information on which to base a ruling.

## C.

As noted, Petitioner was charged with conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846.   ECF 88. At that time, 21 U.S.C. § 841(b)(1)(A) provided, in part: "[I]n the case of a violation of subsection (a) of this section involving –

> (i)     1 kilogram or more of a mixture or substance containing a detectable amount of heroin;

(ii)     5 kilograms or more of a mixture or substance containing a detectable amount of [cocaine]; [or]

(iii)     50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;[10]

... such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life ….

As to Carter, the jury determined that Count One involved 100 grams or more of heroin, 50 grams or more of cocaine base, and no powder cocaine.  ECF 141.  Based on these findings, Carter was subject to the statutory sentencing range for Count One of at least 10 years up to life imprisonment, on the basis of 21 U.S.C. § 841(b)(1)(A)(iii), which criminalized 50 grams or more of cocaine base.

Following passage of the 2010 FSA, the quantity of cocaine base necessary to trigger § 841(b)(1)(A)(iii) was increased to 280 grams.  *Dorsey*, 567 U.S. at 264.  And, it is undisputed that Carter's conviction under Count One is a "covered offense" under Section 404 of the 2018 FSA, and thus he is eligible for relief.  *See id.*, Section 404(a) (defining a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the [2010 FSA [. . .].""); *see also Gravatt*, 953 F.3d at 262 (discussing the "threshold requirement of a 'covered offense'"); *Peters*, 843 F.3d at 575 (stating that the 2010 FSA "reduced the statutory penalties for cocaine base offenses").

In accordance with the 2018 FSA, the government concedes that Count One now carries a mandatory minimum sentence of five years, rather than the ten years in effect in 2001. Moreover, as to Carter, the maximum term of imprisonment is now 40 years, rather than a term

---

[10] As discussed above, the 2010 FSA amended 21 U.S.C. § 841(b)(1)(A)(iii) to read: "280 grams or more of a mixture or substance described in clause (ii) which contains cocaine base …."

of life imprisonment, which was the statutory maximum in 2001.  *See* ECF 389 at 7.  And, in 2001, the Guidelines were mandatory, whereas they are now advisory.

To be sure, Carter's sentencing Guidelines were based on the application of the murder cross-reference, at U.S.S.G. § 2A1.1(a), calling for a life sentence.  *See* U.S.S.G. § 2A1.1(a); ECF 389 at 7 n.4.  But, it is axiomatic that the Court cannot impose a sentence for Count One in excess of the statutory maximum of 40 years.

As to Counts Seven and Eight, the two firearms offenses under 18 U.S.C. § 924(c), Carter was sentenced to a mandatory consecutive term of 30 years (360 months).  At the time, a defendant could be sentenced for multiple § 924(c) charges at the same time, even if the convictions were not yet final, resulting in one five-year sentence and a mandatory minimum penalty of 25 years, consecutive, for each subsequent § 924(c) offense.  *See United States v. Jordan*, 952 F.3d 160, 165 (4th Cir. 2020).  As to Carter's two convictions under 18 U.S.C. § 924(c) (Counts Seven and Eight), Judge Davis was required to impose five and 25 year sentences, respectively.

Section 403(a) of the 2018 FSA amended the language of 18 U.S.C. § 924(c)(1)(C) by striking a "second or subsequent conviction under this subsection" and inserting "violation of this subsection that occurs after a prior conviction under this subsection has become final." Therefore, the amendment has effectively eliminated the procedure of "stacking" multiple § 924(c) convictions for the purpose of enhancing the penalties associated with "second or subsequent" § 924(c) convictions within the same indictment.  *Id.*  Under the now-amended statute, the enhanced mandatory minimum applies only if the prior qualifying § 924(c) conviction was made final before the new violation occurred.  That was not the posture at the time of Carter's sentencing, however.

In other words, the 2018 FSA amended § 924(c), so that it "no longer applies to multiple § 924(c) convictions obtained in a single prosecution." *Jordan*, 952 F.3d at 171.  But, this provision is not retroactive.  *See* 2018 FSA, Section 403(a), (b); *see also Jordan*, 952 F.3d at 172.  Therefore, those offenses are not "covered offenses" under Section 404 of the 2018 FSA. Indeed, the 2018 FSA has no bearing on those crimes.

Because Section 403 is not retroactive, it provides no basis to support a sentence reduction for Counts Seven and Eight.  *See United States v. Hegwood*, 934 F.3d 414, 418 (4th Cir.), *cert. denied*, 140 S. Ct. 285 (2019); *see also United States v. Brooks*, 788 Fed. App'x 213, 214 (4th Cir. 2019) (stating that "'[t]he district court decides on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentence Act'") (quoting *Hegwood*, 934 F.3d at 418).  But, as a result of the 2018 FSA, Petitioner's maximum statutory penalty for Count One cannot exceed 40 years.  And, if Carter were sentenced today, he would face a maximum sentence of 50 years' imprisonment for the three counts of conviction.

Count One is the only count subject to revision.  But, in my view, I may consider the changes in the law under Section 403 of the 2018 FSA as I endeavor to impose a reasonable sentence for Count One.  *See*, *e.g.*, *United States v. Thompson*, CCB-09-0128, 2020 WL 247390, at *1 (D. Md. Jan. 15, 2020).

The recent case of *United States v. Decator*, CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020), is informative.  There, Judge Blake considered a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), pursuant to the 2018 FSA.  The government argued that changes to § 924(c) "cannot form a basis for sentence reduction" because the amendments under Section 403 are not retroactive.  *Id.* at *4.  Rejecting that assertion, Judge Blake said: "The

court is not persuaded." *Id.*  She concluded that she was not "prohibit[ed] from considering this legislative change in deciding whether to reduce Decator's sentence." *Id.*  She said:  "Decatur's continued incarceration under a sentencing scheme that has since been substantially amended is a permissible … reason to consider him for compassionate release." *Id.*

Judge Blake's logic concerning § 924(c), in the context of compassionate release, applies with equal force here.  Therefore, in fashioning an appropriate sentence reduction for Count One, I will consider that, if Carter were sentenced today for Counts Seven and Eight, his sentence would be ten years, not 30 years.

**D.**

In *Dillon v. United States*, 560 U.S. 817, 827 (2010), the Supreme Court stated that a court is required "to follow the Commission's instruction in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized."  As part of the process, the court is required to "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.* Moreover, the court "must conduct 'an individualized assessment of the facts and arguments presented.'" *United States v. Torres-Reyes*, 952 U.S. 147, 151 (4th Cir. 2020) (quoting *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017)) (cleaned up).

I agree with other judges who have ruled that, on resentencing, the court should consider the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate discretionary reduction of sentence. *See*, *e.g.*, *United States v. Logan*, CCB-10-203, ECF 53, 2019 WL 3391618, at *1 (D. Md. July 26, 2019); *United States v. Rose*, 379 F. Supp. 3d 223, 231 (S.D.N.Y. 2019); *United States v. Mitchell*, Cr-05-00110 (EGS), 2019 WL 2647571, at *7-8 (D.D.C. June 27, 2019).  This

extends to relevant evidence, even if such evidence was not "presented at the initial [sentencing] hearing." *United States v. Rumley*, 952 F.3d 538, 546 (4th Cir. 2020) (addressing a § 2255 petition in the context of a predicate offense under the ACCA); *see Pepper v. United States*, 562 U.S. 476, 490-91 (2001).

Section 3553(a) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes described in § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The court should also consider, *inter alia,* "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Additionally, the court may consider an eligible defendant's post-sentencing conduct in determining whether relief is appropriate. *See Pepper*, 562 U.S. 476. And, as noted, I am mindful that, if Carter were sentenced today, he would not receive the 30-year sentence for the two convictions under 18 U.S.C. § 924(c). Rather, if sentencing were held today, he would face a sentence of ten years for those convictions. *See Dean v. United States*, ___ U.S. ___, 137 S. Ct. 1170 (2017).

Carter has been incarcerated since March 21, 2000. ECF 420 at 1. He was 29 years old at sentencing. *Id.* He is now 47 years of age. ECF 408 at 4.

At trial and at sentencing, the government maintained that defendant "played a key role in a violent drug-trafficking organization that used violence and guns to further its objectives." ECF 389 at 1. And, the government claims that "an arsenal of high-powered firearms" were

used during the conspiracy, to commit "multiple murders." *Id.* The weapons are described at ECF 389 at 12.

Judge Davis applied the murder cross reference under U.S.S.G. § 2D1.1(d)(1). In applying the murder cross reference, Judge Davis was mindful of the fact that the jury in federal court was not allowed to consider incriminating statements of J.B., captured on "tapes," which implicated Brown and Carter in a "cold-blooded murder." ECF 397 at 31; *see* ECF 400-1 (incorporating by reference the findings made earlier that day in connection with codefendant Bobby Brown's sentencing and the murder cross reference); *see also* ECF 397 (Bobby Brown Sentencing Transcript) at 29-31. And, Judge Davis expressed his view that this accounted for the jury's acquittal on Count Six. *Id.* However, he was satisfied, by clear and convincing evidence, that application of the murder cross reference was appropriate under § 2D1.1(d)(1) of the Guidelines. ECF 400-1 at 9-10. Notably, however, he found that codefendant Bobby Brown, not Carter, was the actual shooter in the murder of Pennix. *Id.* at 10.

Moreover, Judge Davis, who heard the evidence at trial, expressly found that, in the "hierarchy" of the drug trafficking organization, Julius Brown was "the titular heard" and Bobby Brown and Carter were "the executive committee…." ECF 400-1 at 19. He described Carter as holding "a managing leadership role." *Id.* at 20. He also characterized Carter as "the in-house expert on crack cocaine," with "control over the crack business," *id.*, and the person "in charge of that entire operation." *Id.* at 21.

In his allocution at sentencing, Carter denied that he was part of the drug conspiracy. ECF 400 at 21-22. Notably, Judge Davis found that Carter had a Criminal History Category of I. And, the PSR reflects that Carter had never previously served a lengthy sentence. *See* ECF 420, ¶¶ 28, 30.

As a child, Carter had no contact with his father. ECF 420, ¶ 51. He met his father for the first time in 1997, when Carter was about 25 years old. *Id.*

The PSR reflects that at the time of sentencing, Carter was the father of seven children, ranging in age from 19 months to 11 years old. *Id.* ¶ 52. Sadly, a son was killed six years ago, during Carter's incarceration. ECF 408 at 15. He was a victim of gun violence. *Id.*

Carter has been in custody since his arrest on March 21, 2000 — for about 20 years. In that time, he has successfully completed many BOP programs. *See* ECF 381 at 7-8, 12-16. Remarkably, and to his credit, Carter has never had a single infraction in that entire time. ECF 384-3. Indeed, the government acknowledges that Carter's "disciplinary record is excellent, as he has incurred no infractions while in BOP custody." ECF 389 at 12 n.6. And, as the defense observes, the risk of recidivism declines "'as age increases.'" *Id.* at 4 (citing *United States v. Howard*, 773 F.3d. 519, 533 (4th Cir. 2014) (citation omitted) (other citation omitted).

The Court has also considered the numerous letters submitted in support of Carter. ECF 408 at 8-23. Although Carter did not submit a letter of his own, his lawyer has represented that Carter "is forever regretful and remorseful" about the death of Mr. Pennix. *Id.* at 2.

I have also considered the reduction of sentence for codefendant Bobby Brown. His sentence of life imprisonment plus 30 years was reduced to 40 years. *See* ECF 422. Because Brown was the one who actually shot Pennix, and Carter's Criminal History category was more favorable than Brown's, it is appropriate, in my view, for Carter to receive a revised sentence below the one Brown received.

As I see it, a total sentence of 35 years is sufficient but not greater than necessary to accomplish the objectives of sentencing. This is a long sentence in a system without parole. Because I cannot alter the sentences for the two § 924(c) convictions (Counts Seven and Eight),

17

and with those sentences in mind, I shall reduce the sentence for Count One to the mandatory minimum term of five years' imprisonment, for a total sentence for all three counts of 35 years' imprisonment.  I will also reduce the period of supervised release to five years.[11]

### III. Conclusion

For the reasons stated, I shall reduce the sentence for Count One to the mandatory minimum term of five years.  An Amended Judgment and Statement of Reasons will issue.  Due to the COVID-19 pandemic, however, there may be a delay in their issuance.

Date:   April 17, 2020                                             /s/
                                                            Ellen L. Hollander
                                                            United States District Judge

---

[11] To be clear, the sentence of 35 years is the shortest sentence possible under the current statutory scheme.  Even if Section 403 were retroactive, however, I am satisfied that a total sentence of 35 years is appropriate, in light of the gravity of the underlying offenses, as well as the appropriate application of the murder cross reference.